***********
Upon review of all of the competent evidence of record with references to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. AmComp was the carrier of workers' compensation insurance for defendant-employer at all relevant times.
4. Plaintiff worked for defendant-employer from May 17, 2000, through January 3, 2001.
5. Plaintiff's average weekly wage is $304.99, which yields a compensation rate of $203.33 per week.
The parties stipulated into evidence the following at the hearing before the Deputy Commissioner: plaintiff's medical records as Stipulated Exhibit 1; a Form 22, Wage Chart, as Stipulated Exhibit 2; and Industrial Commission forms, Plaintiff's Responses to Interrogatories, and plaintiff's employment records as Stipulated Exhibit 3.
The issues before the Commission are whether plaintiff sustained an injury by accident or specific incident that arose out of and in the course of his employment with defendants under N.C. Gen. Stat. §97-2(6), and if so, to what benefits or other compensation is plaintiff entitled?
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
Plaintiff was born on May 15, 1975 and was twenty-seven years old on the date of the hearing before the Deputy Commissioner. Plaintiff worked for defendants as a laborer on May 17, 2000. Plaintiff's job duties included raking, shoveling, using a ditch wench and backhoe to lay cable, and pulling cable. Plaintiff last worked for defendants on January 3, 2001.
Plaintiff testified at the hearing before Deputy Commissioner Taylor that he injured his back while pulling cable for defendants in the fall of 2000. Plaintiff admitted he never reported this injury to defendants until shortly before the hearing before Deputy Commissioner Taylor. Plaintiff never filed an Industrial Commission Form 18 or Form 33 and never placed defendants or the Industrial Commission on notice of this injury.
Plaintiff testified and stated in interrogatory responses that he injured his back again on January 3, 2001, while pulling cable through a drilled hole during his employment with defendants.
Plaintiff testified that Mr. Brian White, a co-worker, was with him at the time of the incident. Plaintiff testified and stated in his interrogatory responses that he was also working with Martin Brinkman, his supervisor, and Paul Sigmon, a co-worker, on the day the incident occurred. Plaintiff stated that he immediately told Mr. Brinkman about the incident. He also testified that he rode home at the end of the workday with Mr. Brinkman and Mr. Sigmon. Plaintiff testified and stated in his interrogatory responses that he and Mr. Sigmon discussed his injury and that Mr. Sigmon inquired as to "whether or not [Plaintiff] was going to be okay."
Plaintiff further testified and stated in his interrogatory responses that both Mr. Brinkman and Mr. Sigmon witnessed him struggle to get out of the truck in which they were riding to go into his house.
The Full Commission finds that plaintiff's testimony regarding the January 3, 2001, injury is not credible. The Full Commission declines to reverse the credibility finding of Deputy Commissioner Taylor who had an opportunity to observe plaintiff's testimony at the hearing before her, as well as the testimony of the other witnesses.
Mr. Brinkman worked with plaintiff on January 3, 2001. He testified he did not see plaintiff injure his back at work on January 3, 2001, or on any other day. Mr. Brinkman testified plaintiff did not inform him that he hurt his back at work and said plaintiff routinely complained of back pain. Mr. Brinkman witnessed plaintiff experiencing symptoms of back pain before January 3, 2001. Plaintiff told Mr. Brinkman that he injured his back a few years earlier in a motor vehicle accident.
On-the-job injuries were to be reported to Mr. Brinkman because he was the on-site supervisor. Mr. Brinkman then filed the appropriate paper work and, if necessary, took the injured worker for medical treatment. Mr. Brinkman did not complete any paper work on January 3, 2001, and did not take plaintiff for medical treatment because plaintiff did not report a work injury. Mr. Brinkman and plaintiff were friends before and during plaintiff's employment with defendants, and their families socialized together.
Mr. Sigmon worked with plaintiff on and before January 3, 2001. Mr. Sigmon worked near plaintiff the entire day of January 3, 2001. Mr. Sigmon did not see plaintiff injure his back at work on January 3, 2001, or on any other day. Mr. Sigmon testified plaintiff routinely complained of back pain prior to January 3, 2001.
Mr. Sigmon rode home from work with plaintiff and Mr. Brinkman on January 3, 2001. During this trip plaintiff did not inform Mr. Sigmon or Mr. Brinkman that he injured his back at work. According to Mr. Brinkman and Mr. Sigmon, plaintiff did not have difficulty getting in or out the van. Mr. Sigmon and plaintiff have known each other since they were young. At the time of his testimony, Mr. Sigmon was no longer employed with defendants.
Mr. Brian White worked with plaintiff on and before January 3, 2001. Mr. White worked near plaintiff the entire day of January 3, 2001. Mr. White did not see plaintiff injure his back on January 3, 2001, or on any other day. Mr. White saw plaintiff exhibit signs of back discomfort in November and December 2000. Plaintiff routinely complained to Mr. White of back pain before January 3, 2001.
Plaintiff asked Mr. White and Ms. Athey, another co-worker, shortly before Thanksgiving of 2000 how he could obtain workers' compensation benefits.
Plaintiff's attendance records completed by Mr. Brinkman reflect that he reported to defendants on January 4, 2001, that his back started hurting "again" on January 3, 2001. These attendance logs do not reflect that plaintiff reported injuring his back at work.
Plaintiff and Mr. Brinkman developed a personal dispute involving plaintiff, plaintiff's wife, Mr. Brinkman and his wife in mid — January of 2001, regarding allegations made by plaintiff. Plaintiff gave defendants notice of his work injury after this dispute occurred.
Defendants had suitable work available for plaintiff after January 3, 2001. David Penland and Mr. Brinkman both testified that plaintiff never sought light duty work with defendants and that they were under the impression that plaintiff had quit. Plaintiff's job was a high turnover job with defendants.
Plaintiff had a significant medical history of back pain and treatment. Plaintiff completed a medical history form for Carolina Primary and Urgent Care before January 3, 2001. He stated on this form at Carolina Primary and Urgent Care that he had a history of back problems.
Prior to the alleged injury, plaintiff told an emergency room physician on February 17, 2000, that he injured his back in a motor vehicle accident a "couple of years" previous and was then experiencing low back pain that would come and go for days at a time. Plaintiff was diagnosed on February 17, 2000, with an acute lumbar sprain and prescribed medication.
On September 21, 2000, Dr. Lewis Tondo, an orthopedist, saw plaintiff for complaints of low back pain. He diagnosed plaintiff with degenerative disc disease and began him on Mobic. Plaintiff returned to Dr. Tondo on November 14, 2000, reporting that his back pain was worsening and that the Mobic was of no help.
Plaintiff also reported that he was then seeing a chiropractor for his symptoms. Dr. Tondo found plaintiff "quite tender" in the lower lumbosacral area during the November 14, 2000, examination. He diagnosed plaintiff with possible bulging discs and changed his medication. Dr. Tondo also instructed plaintiff to return to the clinic for further treatment. Plaintiff returned to Dr. Tondo on December 20, 2000, due to persistent low back pain. Dr. Tondo diagnosed possible bulging discs, changed plaintiff's medication to a narcotic analgesic, which Dr. Tondo testified was "more potent" than his previous medication. He also restricted plaintiff's work activities and instructed him to undergo an MRI.
On January 3, 2001, plaintiff sought treatment from Davis Regional Medical Center for reported ongoing back pain. Plaintiff told the emergency room nurse who initially interviewed him that he injured his back one month previous while pulling cable at work. He described his pain as "intermittent" in nature. He also told the nurse that the pain he was then experiencing was "similar" to his prior back pain. Plaintiff did not tell the intake nurse that he injured his back on January 3, 2001.
Plaintiff underwent x-rays on January 3, 2001, which were normal. Plaintiff was referred to Dr. Tondo for further treatment. He was not taken out of work by the emergency room attending physician on January 3, 2001.
Dr. Tondo evaluated plaintiff on January 4, 2001, for "ongoing" low back pain. Plaintiff did not report any injury at work on or about January 3, 2001 to Dr. Tondo. Dr. Tondo diagnosed a bulging versus a herniated disc and ordered an MRI of plaintiff's spine.
Plaintiff's January 9, 2001, MRI showed grade I spondylolisthesis at L5, with impingement of the right L5 nerve root. Dr. Tondo subsequently referred plaintiff to Dr. Mark Williamson, an orthopedist, with Carolina Specialty Care. Dr. Tondo did not take plaintiff out of work and never assigned any work restrictions after plaintiff's alleged January 3, 2001, injury.
Before plaintiff was seen by Dr. Williamson, plaintiff referred himself to Iredell Memorial Hospital for complaints of chest pain and anxiety.
The January 16, 2001, Iredell Memorial Hospital emergency notes do not mention that plaintiff was then experiencing back pain or sustained an injury at work.
Plaintiff presented to Dr. Williamson on January 17, 2001, complaining of low back pain. Plaintiff reported to Dr. Williamson that he felt a sharp pain in his lower back while pulling cable at work "a couple of months ago." Dr. Williamson's January 17, 2001, note reflects that plaintiff did not report injuring his back at work on January 3, 2001. Following an examination, Dr. Williamson diagnosed plaintiff with minimal spondylolisthesis with right-sided L5-S1 disc herniation causing nerve root impingement. Dr. Williamson provided injection therapy treatment and referred plaintiff for further injections.
Plaintiff was seen by Dr. Bobby Kearney, with Carolina Pain Consultants, on March 23, 2001. Plaintiff reported that he injured his back in the fall of 2000, and re-injured it in January of 2001. This is the first time that plaintiff told any of his medical providers that he injured his back at work in January of 2001.
Dr. Kearney examined plaintiff on March 23, 2001 and diagnosed him with lumbar radicular pain with questionable herniated disc. He scheduled a lumbar epidural injection and placed plaintiff on Oxycontin. The steroid injection was administered on March 27, 2001.
On April 9, 2001, Dr. Kearney administered a second steroid injection. He also assigned work restrictions of no lifting more than fifty pounds. Plaintiff was not assigned any other work restrictions.
On April 17, 2001, Dr. Kearney noted that the steroid injection therapy did not offer lasting relief and referred plaintiff back to Dr. Williamson.
Plaintiff underwent a lumbar spine CT scan on April 27, 2001. It showed grade I spondylolisthesis at L5-S1 with no signs of disc herniation or spinal stenosis at any level.
Plaintiff returned to Dr. Kearney on June 7, 2001, for a third steroid injection.
On June 23, 2001, plaintiff presented to the Davis Regional Medical Center's Emergency Department secondary to a flare up in his back pain. Plaintiff told the intake nurse that his back pain began in the fall of 2000. Thereafter, plaintiff sporadically refered himself to Davis Regional Medical Center for occasional back pain and headaches.
On August 1, 2001, plaintiff told the Davis Regional Medical Center intake nurse that his back pain started in the fall of 2000, and that it flared up the night before.
Dr. Kenneth E. Wood, an orthopaedic surgeon, saw plaintiff on August 9, 2001 and plaintiff told Dr. Wood that he did not have any back pain before the fall of 2000.
Following an evaluation by Dr. Wood on August 9, 2001, Dr. Wood diagnosed plaintiff with grade I spondylolisthesis at L5-S1, right sciatica, and L5 nerve root impingement. Dr. Wood recommended instrumentation and fusion at L5-S1, and performed this procedure on August 27, 2001.
Plaintiff has continued to receive treatment from Dr. Wood and Dr. Kearney since that time. He had not reached maximum medical improvement at the time of the hearing before the Deputy Commissioner.
Dr. Wood felt that plaintiff's alleged injury on January 3, 2001 made his underlying spondylolisthesis symptomatic. Dr. Wood's opinion was based on plaintiff's reported history to him, eight months after the incident. Dr. Wood's testimony is given little weight because Dr. Wood was unaware of plaintiff's preexisting complaints of back pain and work restrictions and his opinion was primarily based on plaintiff's history of events.
Plaintiff had been assigned work restrictions before his alleged January 3, 2001, work injury and was not taken out of work by the emergency department physician who saw him on January 3, 2001, or assigned work restrictions by Dr. Tondo or Dr. Williamson, both of whom treated plaintiff for two months after the incident.
Plaintiff stated in his interrogatory responses and testified at hearing before Deputy Commissioner Taylor that he worked at Food Lion and Marriott Hotel in July of 2001. Plaintiff testified that he did not work any place else subsequent to his employment with defendants.
On April 21, 2001, however, plaintiff told the intake nurse at Davis Regional Medical Center that he was employed full time. On June 23, 2001, he told the Davis Regional Medical Center intake nurse that he was working. On June 24, 2001, plaintiff told another intake nurse at Davis Regional Medical Center that he was working full time. On July 14, 2001, he told the Davis Regional Medical Center intake nurse that he was working full-time and that his work was causing him pain.
The Full Commission finds based upon the greater weight of the evidence of record that plaintiff's testimony that he sustained an injury by accident or specific traumatic incident is not credible.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain a compensable injury by accident or specific traumatic incident that arose out of and in the course of his employment with defendant-employer on January 3, 2001. N.C. Gen. Stat. § 97-2(6).
2. Therefore, plaintiff is not entitled to any workers' compensation benefits for said alleged injury by accident or specific traumatic incident. Id.
3. Plaintiff is time barred from receiving any workers' compensation benefits for any other injury by accident or specific traumatic incident that he alleges arose out of and in the course of his employment with defendants. N.C. Gen. Stat. § 97-24.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
Plaintiff's claim for workers' compensation benefits under the law must be and hereby is DENIED.
Each side shall pay its own costs; however, defendants shall pay an expert witness fee of $350.00 each to Dr. Tondo and Dr. Wood.
This the ___ day of October 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mb